The STEELCRAFT MANUFACTURING CO., Plaintiff,

v.

Orville J. HEWKIN, Jr., d.b.a. Hewkin Construction Company, et al., Defendants,

and

United States of America, Intervenor.

Civ. A. No. 1355–D.

United States District Court
E. D. Illinois.
Oct. 26, 1956.

Charles R. Young, Asst. U. S. Atty., Danville, Ill., and Jack Morris, Asst. U. S. Atty., East St. Louis, Ill., for intervenor.

Benjamin Norwood, Jr., Danville, Ill., and Rubin Katz, Cincinnati, Ohio, for plaintiff.

Henry Wise, Danville, Ill., for John Ellis.

John M. Mitchem, Urbana, Ill., for Champaign County Bank & Trust Company.

Dwight H. Doss, Monticello, Ill., for Jesse Whitehouse.

Joseph M. Williamson, Urbana, Ill., for Joseph T. Clancy.

PLATT, Chief Judge.

Steelcraft Manufacturing Company, an Ohio Corporation, filed suit in the nature of an interpleader praying that it be discharged from further liability on its payment bond executed under a contract with the Commodity Credit Corporation for the erection of steel bins. It tendered the payment of $15,-861.51 into court to be distributed as ordered by the court.

Steelcraft entered into this contract with Commodity Credit Corporation prior to August 10, 1954 and on this date subcontracted with Orville Hewkin for the erection of the bins. Hewkin was obligated to erect the bins, furnish all materials and supplies, except those furnished by Steelcraft and Commodity Credit Corporation. Also on August 10, 1954, Hewkin "assigned all his right, title and interest" in his contract to the Champaign County Bank and Trust Company, of Urbana, Illinois, and directed Steelcraft to make all payments to him under said contract direct to the bank. The bank advanced at least $10,000, which is unpaid, to Hewkin on the security of the assignment. A copy of the assignment was served upon Steelcraft. Hewkin completed his contract and in April, 1955 was adjudged a bankrupt. Steelcraft withheld the $15,861.51, being the balance due under the contract with Hewkin upon being advised that in addition to the bank's assignment there were four unpaid materialmen, viz.:

| | |
|---|---|
| Joseph T. Clancy | $4,371.00 |
| Ellis Gravel Company | 1,616.75 |
| Jesse Whitehouse | 3,862.34 |
| Hunter Lumber Company | 140.46 |

The bank, the materialmen, the trustee in bankruptcy and the bankrupt, all citizens of Illinois, were made parties defendant. The materialmen have filed answer asserting priority over the bank's assignment. The United States of America intervened in the suit seeking to impress upon the sum withheld its tax liens for delinquent withholding taxes of Hewkin in the amount of $5,-397.68 assessed December 2, 1954 for the third quarter of the year 1954, and $3,995.95 for the fourth quarter of the year 1954 assessed March 15, 1955. At the time of the assessments all of the materialmen involved here had delivered their materials, completed their work and presented their bills to Hewkin. Steelcraft kept an agent on the jobs at all times and was aware of the progress of the work and materials furnished.

Clancy and Ellis filed counterclaims against Steelcraft and third-party claims for relief against the Fireman's Fund and Indemnity Company, the surety on the payment bond executed by Steelcraft to the Commodity Credit Corporation. Whitehouse, in substance

by his answer, also filed a counterclaim against Steelcraft. Only the counterclaim of Ellis was filed in the name of the United States of America in strict accordance with the Miller Act, 40 U.S.C.A. § 270b(b). In substance all the materialmen's claims are based upon the Miller Act and at the trial of the cause were so construed and considered. Rule 15(b), F.R.Civ.P. 28 U.S.C.A. See Glens Falls Indemnity Co. v. United States, 9 Cir., 229 F.2d 370.

■■ The Miller Act, 40 U.S.C.A. § 270a et seq. is remedial and must be liberally construed to accomplish its purpose. Fleisher Engineering & Const. Co. v. United States, 311 U.S. 15, 61 S.Ct. 81, 85 L.Ed. 12. Ellis Gravel Company literally complied with the notice required under the Miller Act. Clancy gave notice to Steelcraft within 90 days through the Agricultural Stabilization and Conservation Division of the Department of Agriculture. Whitehouse delivered a copy of his unpaid bill to Orville Hewkin who in turn at his request delivered it to Steelcraft within the required 90 days of the date the material was furnished. Thus the latter two claimants stated accurately the amount claimed and to whom the material was furnished to Steelcraft. This court finds that all of the notices were intended to inform Steelcraft of the unpaid material claims of Hewkin and were sufficient notice to comply with the Miller Act. Fleisher Engineering & Const. Co. v. United States, supra; Houston Fire & Casualty Ins. Co. v. United States, 5 Cir., 217 F.2d 727.

■ All of the answers and claims of the materialmen were filed within one year of the final furnishing of materials which necessarily is within one year of the settlement between Steelcraft and Commodity Credit Corporation. The Hunter Lumber Company filed an answer but failed to appear and make proof of their claim at the trial, and their claim must be disallowed. Steelcraft deducted liquidated damages in accordance with the subcontract due to delayed completion by Hewkin which it paid to Commodity Credit Corporation, leaving a balance due on the contract in the amount of $15,861.51. Neither the government nor any of the defendants have questioned the amount of liquidated damages so paid by Steelcraft.

■ The government maintains that its tax liens are entitled to priority over the claims of the materialmen whose claims had not been reduced to judgment. A tax lien of the government was fully perfected at the time the assessments were made, 26 U.S.C.A. § 6322 (formerly § 3671). If the materialmen were opposing the tax liens on the basis of a statutory mechanic's or materialman's lien, the government would have priority. United States v. Kings County Iron Works, 2 Cir., 224 F.2d 232. United States v. White Bear Brewing Co., 7 Cir., dissenting opinion, 227 F.2d 359, reversed 350 U.S. 1010, 76 S.Ct. 646, 100 L.Ed. 871; Cf. United States v. Saidman, 97 U.S.App.D.C. 344, 231 F.2d 503; United States v. Hawkins, 9 Cir., 228 F.2d 517.

The facts in the instant case present a different situation. Steelcraft was the principal on the payment bond executed to the Commodity Credit Corporation with Fireman's Fund Indemnity Company as surety, and is therefore liable for the unpaid material bills as principal upon this bond under the Miller Act. In United States Fidelity & Guaranty Co. v. United States, 10 Cir., 201 F.2d 118, 121, the court said:

"On the date of the execution of the subcontract the prime contractor had a specific right of ownership in any funds accruing to the subcontractor from the performance of the subcontract. The right to withhold these funds upon default was superior to any other claim against the fund as the property of the subcontractor."

This specific right of ownership has even been held to extend to interest on the sums expended by a surety. Glenn v. American Surety Co., 6 Cir., 160 F.2d

**876**

977. Steelcraft as the principal on the bond had a definite ownership in the amount due Hewkin for a specific amount at all times. Steelcraft retained the ownership of the funds to be paid to Hewkin until the contract was fully performed. This amount was determinable by deducting from the subcontract price the amount which Steelcraft had advanced to Hewkin from time to time as the work progressed. Since Steelcraft is liable under the Miller Act to the materialmen for their unpaid bills it was entitled to retain sufficient funds to reimburse itself, based upon its prior right of ownership which existed from the inception of the subcontract. United States Fidelity & Guaranty Co. v. United States, supra; Glenn v. American Surety Co., supra. See also General Casualty Co. of America v. United States, 5 Cir., 205 F.2d 753; Karno-Smith Co. v. Maloney, 3 Cir., 112 F.2d 690; In re Caswell Const. Co., Inc., D.C.N.D.N.Y., 13 F.2d 667; American Fidelity Co. v. Delaney, D.C.D.Vt., 114 F.Supp. 702; Great American Indemnity Co. v. United States, D.C.W.D.La., 120 F.Supp. 445; New York Casualty Co. v. Zwerner, D.C.N.D.Ill.E.D., 58 F.Supp. 473.

The terms of the contract obligated Hewkin to "furnish all materials and supplies," thereby creating an implied condition of the subcontract that the materialmen would be paid. Houston Fire & Casualty Insurance Co. v. E. E. Cloer General Contractor, 5 Cir., 217 F.2d 906; United States, for use of W. E. Foley & Bro. v. United States Fidelity & Guaranty Co., 2 Cir., 113 F.2d 888. The materialmen are thus third-party beneficiaries of Steelcraft's specific ownership in the amount due Hewkin derived by and from the date of the subcontract. The government's claim is based upon the failure of Hewkin to pay his taxes and he and his property alone are liable for their payment. See Central Bank v. United States, 345 U.S. 639, 73 S.Ct. 917, 97 L.Ed. 1312. Steelcraft is not liable for the payment of

Hewkin's taxes to the government. United States v. Crosland Const. Co., 4 Cir., 217 F.2d 275. See Great American Indemnity Co. v. United States, supra. Since Hewkin was not entitled to receive payment until he complied with his subcontract he had no right of ownership in the amount still due and the lien of the government never attached to this fund. The rights of the government rose no higher than those of the taxpayer whose right to the withheld sum never accrued. Great American Indemnity Co. v. United States, supra; F. H. McGraw & Co. v. Sherman Plastering Co., D.C.Conn., 60 F.Supp. 504, affirmed F. H. McGraw & Co. v. Milcor Steel Co., 2 Cir., 149 F.2d 301, certiorari denied 326 U.S. 753, 66 S.Ct. 92, 90 L.Ed. 452. To hold otherwise would impose upon Steelcraft double liability, that is, to the government and the unpaid materialmen. This would be inequitable. See Karno-Smith Co. v. Maloney, 3 Cir., 112 F.2d 690.

The bank contends that its assignment is superior to the claims of the materialmen. Steelcraft acknowledged the assignment but it is obvious that Hewkin thereby intended to assign only his profit to be received under the subcontract. See Mueller v. Northwestern University, 195 Ill. 236, 63 N.E. 110. Furthermore, the bank could stand in no better position against Steelcraft than Hewkin, its assignee. Reeve v. Smith, 113 Ill. 47; Angelina County Lumber Co. v. Michigan Cent. R. Co., 252 Ill.App. 82.

The bank does have priority over the tax claim of the government. This is not disputed by the government. The assignment to the bank was executed long before the government's taxes were assessed. By virtue of 26 U.S.C.A. § 6323 (formerly § 3672) the bank is a purchaser to the extent of the amount it advanced to Hewkin as present consideration for the assignment. National Refining Co. v. United States, 8 Cir., 160 F.2d 951. Cf. United States v. Scovil, 348 U.S. 218, 75 S.Ct.

244, 99 L.Ed. 271; R. F. Ball Construction Co. v. Jacobs, D.C.W.D.Tex., 140 F.Supp. 60.

This court therefore concludes that Steelcraft is entitled to an order that it be discharged upon the payment of $15,861.51 into this court and the materialmen are entitled to be paid their claims. The balance remaining after the payment of these claims of the materialmen must be paid to the bank. Since this absorbs the entire fund withheld there is nothing to be paid to the government on withholding taxes.

Findings of fact, conclusions of law and final order may be submitted.