273 F.2d 873
 UNITED STATES of America for the Use and Benefit of J. A. EDWARDS & CO., Inc., Plaintiff-Appellant,
v.
THOMPSON CONSTRUCTION CORP. and Standard Accident Insurance Company, Defendants-Appellees, and
Ben B. Greene, Inc., Defendant.
 No. 72.
 Docket 25667.
 United States Court of Appeals Second Circuit.
 Argued November 20, 1959.
 Decided December 16, 1959.
 
 Irving Levine, New York City, for plaintiff-appellant.
 Carl E. Buckley, New York City (Nevius, Jarvis & Pilz, New York City, on the brief), for defendants-appellees.
 Before MEDINA, MOORE and FRIENDLY, Circuit Judges.
 FRIENDLY, Circuit Judge.
 
 
 1
 We must determine on this appeal whether sufficient notice was given defendant The Thompson Construction Corp. to entitle the use plaintiff, J. A. Edwards & Co., Inc., which furnished materials to a subcontractor, Ben B. Greene, Inc., to recover from Thompson and its surety under the bonds furnished by the latter pursuant to the Miller Act, 40 U.S.C.A. § 270a(a) (2) and 270b(a). Judge Dawson, in a reasoned opinion, held the notice did not meet the requirement of the statute. We agree.
 
 
 2
 In 1955 the United States entered into a contract with Thompson for the construction of a Nike site at Lewiston, N. Y. Pursuant to the Miller Act, 40 U.S. C.A. § 270a(a)(2), Thompson executed a standard government payment bond to the United States wherein Thompson was the principal and Standard Accident Insurance Company was the surety, "for the protection of all persons supplying labor and material in the prosecution of the work provided for in said contract for the use of each such person." Thompson employed a subcontractor, Ben B. Greene, Inc., for the performance of certain electrical work. Greene in turn requested Edwards to furnish electrical materials and supplies for use in Greene's subcontract. The Lewiston project was by no means the only Nike project where Greene did this. We have another such case in United States for use and benefit of J. A. Edwards & Co. v. Peter Reiss Construction Co., 2 Cir., 273 F.2d 880. United States for use and benefit of J. A. Edwards & Co. v. Bregman Construction Corp., D.C.E.D.N.Y.1959, 172 F. Supp. 517, is still another.
 
 
 3
 In the claim dismissed by the District Court, Edwards sought to recover from Thompson and its surety a balance of $7,313.70 due for deliveries of material between September 19 and October 13, 1956. Edwards did not contend it had any contractual relationship with Thompson. It relied rather on the proviso in § 270b(a) of the Miller Act, 40 U.S.C.A. § 270b(a), which we quote in the margin.[1] It claims that the statutory requirement of notice was satisfied by a letter dated January 9, 1957 sent by Greene to Thompson at Edwards' instance which we quote below,[2] at least when the letter is taken in conjunction with other facts.
 
 
 4
 Judge Dawson held the letter did not meet the statutory requirements because "the prime contractor, upon receipt of the notice from the subcontractor, was in no position to know that it had emanated from the materialman," [172 F. Supp. 164] because the letter did not set forth with substantial accuracy the amount claimed by Edwards, because the letter did not state it was related to material supplied for the subject contract, and because the letter afforded no indication that it was to be interpreted as a notice under the Miller Act. Accordingly he directed that the action be dismissed as against the contractor and the surety but awarded judgment against the subcontractor Greene, who had defaulted in the action.
 
 
 5
 The reason why the Miller Act conditions the rights of a person having "no contractual relationship express or implied with the contractor furnishing said payment bond" upon the giving of proper notice within ninety days from the date "on which such person did or performed the last of the labor or furnished or supplied the last of the material for which such claim is made," is readily understandable. It was assumed that such third parties will first endeavor to collect from the subcontractor with whom they have a contract relation. During a reasonable period, while these efforts are going forward, the contractor withholds the payments due the subcontractor. If he receives a third party claim within ninety days, he reserves appropriate amounts from monies otherwise owing to the subcontractor. But, once ninety days have elapsed without such notice, he is free to pay the subcontractor for the latter's work without risk of liability under his bond to laborers and materialmen whose sole contractual relation is with the subcontractor. A statute which gave rights on the contractor's bond to laborers and materialmen having no contractual relations with him but which did not require timely and adequate notice to him, would lead either to double payments or to interminable delay in settlements between contractors and subcontractors to guard against these, — in either case with attendant prejudice to all concerned.
 
 
 6
 The notice which the Miller Act requires is one meeting this basic purpose. Its essence is, as said in United States for Use of Bruce Co. v. Fraser Construction Co., D.C.W.D.Ark.1949, 87 F.Supp. 1, 5, that it must show it "was intended to be the presentation of a claim," a claim against the contractor and its surety by the laborer or materialman in the latter's own right. In addition, it must state "with substantial accuracy" the amount claimed to be owing the laborer or materialman on the project and the name of the party to whom the material was furnished or supplied or for whom the labor was done or performed. If it meets these simple and basic requirements, no degree of formality is needed. But meet them it must, for otherwise the purpose of the notice requirement would be frustrated. And while the United States has an interest in the payment of all persons furnishing labor and materials to government projects, it also has an interest in the prompt settlement of accounts between contractors and subcontractors and in avoiding undue and preventable losses to contractors and their sureties — costs which in the long run the public pays.
 
 
 7
 The letter of January 9, 1957 did not measure up to this test. The letter was a request by Greene that Thompson consent to Greene's assigning to Edwards monies payable to Greene by Thompson under the subcontract the relevant paragraph of which is quoted below[3] — that and nothing more. It was signed by Greene, the subcontractor, not by Edwards, the materialman. It in no way indicated that Edwards was making any direct claim against Thompson and Thompson's surety for materials furnished on the Lewiston project or that Greene was making any such claim on Edwards' behalf. The letter refers only to amounts owing by Thompson to Greene; it says nothing about amounts owed by anyone to Edwards and certainly nothing about amounts owed by Greene to Edwards for materials supplied by Edwards on the Lewiston job, the only item for which the Miller Act gave Edwards a claim against Thompson and the surety. To be sure, Thompson would hardly have thought Greene was making Edwards a present of Greene's claim against Thompson; but it could perfectly well have thought that Edwards had been fully paid for materials on the Lewiston project and that the assignment related to other Greene-Edwards transactions. It is of no consequence that the balance of $7,527.98, which was then thought to be the amount owing to Greene from Thompson, approximates the amount of $7,313.70 now claimed by Edwards against Greene for materials at Lewiston. So far as appears, this is pure coincidence. In any event, there was nothing in the letter to show, as the Act requires, how much Edwards claimed to be due it from Greene for materials furnished to the particular work. The facts, made much of by plaintiff, that the letter was signed by Greene at plaintiff's instance and that plaintiff's vice-president put it in the mail, are equally irrelevant. For while we assume that Thompson did not suppose the letter was spontaneous with Greene, nothing on its face gave Thompson any reason to think that a direct claim against Thompson and the surety was being asserted on Edwards' behalf for Lewiston materials. Yet such a "presentation of a claim" is what the Act requires.
 
 
 8
 Edwards contends that even if the letter of January 9, 1957 was not adequate in and of itself, other facts made it so. It says in its brief (p. 12) that "In the factual setting here presented, it would require the exercise of very little imagination on the part of the general contractor Thompson to tie in the letter with the furnishing of electrical material by the use plaintiff under the prime Government contract." We think the need for exercising imagination was what the notice provision of the Miller Act was intended to prevent. However, assuming arguendo that a writing relied on as the required notice may be supplemented by extrinsic facts, these do not improve Edwards' case
 
 
 9
 The first facts relied on are discussions between Edwards and Thompson in the summer of 1956 concerning the late delivery of certain materials that Edwards was supplying. While these show that Thompson knew Edwards was furnishing some electrical materials to the project, there is nothing in this episode that would clearly have led Thompson to interpret Greene's request, six months later, for permission to assign Greene's claims to Edwards as the presentation of a claim by Edwards for materials furnished to the project.
 
 
 10
 The next episode is that in September, 1956, Greene telephoned Mr. Thompson, president of the defendant contractor, "to see when he [Greene] was going to get paid and he asked, as soon as the payment came in from the Government, that we would make out a check in that amount and send it to Edwards because he owed you that amount." Mr. Thompson said also that thereafter "Greene got paid every month, so that each time a payment was due to him he would call up and go through the same procedure. I think the next conversation on the subject would be one month later, approximately." Edwards claims this should have put Thompson on notice that Greene was in financial difficulties with Edwards. Probably so, but there was nothing in this to show that the amounts that Greene asked Thompson to remit to Edwards were for material furnished by Edwards to the Lewiston project as distinguished from others, that Edwards meant to assert any direct claim against Thompson and its surety on the Miller Act bond as distinguished from working out its problems by receiving monies due from Thompson to Greene, or that the monies so received by Edwards did not constitute full payment. Indeed, as we shall see, Thompson's letter of February 8, 1957, shows that it thought precisely that.
 
 
 11
 When we move on to January 1957, the evidence not only is not helpful but becomes decidedly damaging to Edwards. Plaintiff's counsel read into the record still another excerpt from Mr. Thompson's deposition in which the latter stated how he reacted to the January 9 letter from Greene. He testified: "At the time he [Greene] wrote that letter there was no indication to me that he owed Edwards on our job. It looked to me as though he was in financial difficulties, but not necessarily as far as we were concerned, because we had paid Edwards previously and to the best of our knowledge had settled the entire thing." And, in answer to a question "Isn't that a letter requesting money?", Thompson answered "Yes, but not necessarily for material. This is a statement of what Greene thought they had coming on the contract. It may be for labor or material or for anything." Even Edwards' vice-president, Blackledge, in his testimony characterized the January 7 letter as being one "which would be in effect an assignment of the account to us to protect our $7,700, approximately, that he still owed us on that job."
 
 
 12
 The final piece of evidence relied on is a letter from Thompson to Edwards dated February 8, 1957, quoted below.[4] The letter on its face harms Edwards severely. For it affords contemporaneous confirmation to Mr. Thompson's later testimony that he construed the January 9 letter as merely requesting recognition of an assignment, to which Thompson agreed on February 8 "in so far as we are permitted by law," and not at all as a Miller Act notice. The February 8 letter makes it plain that Thompson considered the only obligation arising on it out of the two letters was to pay Edwards whatever was finally determined to be owing by Thompson to Greene, whether this was more or less than the amount owing to Edwards for materials furnished at Lewiston, a subject as to which Thompson had been given no notice and as to which it therefore had no concern. If evidence to fortify this interpretation of the February 8 letter were needed, the record provides this. Thompson testified that the February 8 letter was prompted by a telephone call on February 7 from Blackledge who "wanted to know how much money we owed Greene," that Blackledge mentioned that "Greene owed him about $50,000," and that Thompson said "What has that to do with us, and how much of that is ours?" to which Blackledge responded that "he didn't have the records and he did not know." Thompson also testified that Blackledge's call was "to see how much money was due Greene on his contract and whether we would confirm an assignment of that money to Edwards." It is immaterial whether Edwards informed Thompson thereafter how much of Greene's debt was on the Lewiston job. For February was too late.
 
 
 13
 We therefore think both from the language of the January 8 letter and also from the attendant circumstances if these are to be considered, that Thompson had no reason to regard the letter as a notice of a claim by Edwards under the Miller Act. If others who had furnished materials to Greene had served notices under the Miller Act, Thompson would have been justified in setting aside monies otherwise due to Greene; and it is immaterial in determining the sufficiency of the January 9 letter as a notice that in this case no Miller Act notices from other materialmen appear to have been served. In fact, however, this record does illustrate the importance of the materialman's sending a notice that properly informs a contractor of his claim. On March 19, 1957, Thompson was served with a Federal tax lien relating to Greene. It has been held that if Thompson had been properly apprised of Edwards' claim, monies required to satisfy it would not be subject to a tax lien against Greene, Steelcraft Manufacturing Co. v. Hewkin, D.C.E.D.Ill., 1956, 148 F.Supp. 872; United States Fidelity & Guaranty Co. v. Miller, D.C. W.D.N.C.1956, 143 F.Supp. 941.
 
 
 14
 While each case as to the sufficiency of notice under the Miller Act necessarily turns on its own facts, the authorities support the view that the notice here was inadequate.
 
 
 15
 Both sides derive comfort from the leading case of Fleisher Engineering & Construction Co. v. United States, for Use and Benefit of Hallenbeck, 1940, 311 U.S. 15, 61 S.Ct. 81, 83, 85 L.Ed. 12. Plaintiff relies upon the Court's statement that the Miller Act should be given "a reasonable construction in order to effect its remedial purpose" and upon the allowance of recovery although the notice received by the contractor had been sent not by registered, but only by ordinary mail. Defendant finds solace, we think with greater reason, in the statement, buttressed by a reference to earlier decisions under the Heard Act, "that a distinction should be drawn between the provision explicitly stating the condition precedent to the right to sue," namely, the content of the notice, which in the Hallenbeck case was "fully met," and "the provision as to the manner of serving notice," the purpose of which the Court regarded as being simply "to assure receipt of the notice, not to make the described method mandatory so as to deny right of suit when the required written notice within the specified time had actually been given and received."
 
 
 16
 The other cases principally relied upon by plaintiff, United States for use of Birmingham Slag Co. v. Perry, 5 Cir., 1940, 115 F.2d 724, Coffee v. United States for Use and Benefit of Gordon, 5 Cir., 1946, 157 F.2d 968, and Houston Fire & Casualty Co. v. United States for Use and Benefit of Trane Co., 5 Cir., 1954, 217 F.2d 727, followed the Hallenbeck decision in dispensing with formalities as to the manner of giving notice. However, in none was there any doubt that the contractor had been fully apprised by the use plaintiff that the letter asserted a direct claim in a specified amount. On the other side, Bowden v. United States for Use of Malloy, 9 Cir., 1956, 239 F.2d 572, 577, certiorari denied 1957, 353 U.S. 957, 77 S.Ct. 864, 1 L.Ed. 2d 909, ruling in favor of the contractor and surety, is closer to the instant case. There the subcontractor authorized the contractor to issue checks payable jointly to itself and various materialmen including Malloy and to charge these amounts against funds due the subcontractor in connection with work on the project. The Ninth Circuit held this insufficient since, among other requirements, "the writing must inform the prime contractor, expressly or by implication, that the supplier is looking to the contractor for payment of the subcontractor's bill." 239 F.2d at page 577. Plaintiff seeks to distinguish Bowden on the ground that Malloy had not known of the subcontractor's action. But this was an alternative ground of decision and, as indicated above, we do not regard Edwards' participation in Greene's January 9, 1957 letter as legally significant when nothing on the face of the letter or otherwise indicated that Edwards was making a direct claim. The Third Circuit has recently followed Bowden in United States for the use of Old Dominion Iron & Steel Corp. v. Massachusetts Bonding and Insurance Company, 3 Cir., 272 F.2d 73. We join with it in endorsing the statement in Bowden, 239 F.2d at page 578:
 
 
 17
 "A brief letter from the supplier to the prime contractor will make certain and unambiguous the rights and liabilities of all concerned — the supplier, the prime contractor, and the surety. We do not believe that Congress intended to have it held that such little expenditure of effort is too much diligence to require of a supplier in order that he may secure his right of action on the payment bond."
 
 
 18
 We agree with Judge Dawson that no such letter was written here.
 
 
 19
 Judgment affirmed.
 
 
 
 Notes:
 
 
 [1]
 The relevant language of the statute is:
 "Provided, however, That any person having direct contractual relationship with a subcontractor but no contractual relationship express or implied with the contractor furnishing said payment bond shall have a right of action upon the said payment bond upon giving written notice to said contractor within ninety days from the date on which such person did or performed the last of the labor or furnished or supplied the last of the material for which such claim is made, stating with substantial accuracy the amount claimed and the name of the party to whom the material was furnished or supplied or for whom the labor was done or performed. Such notice shall be served by mailing the same by registered mail, postage prepaid, in an envelope addressed to the contractor at any place he maintains an office or conducts his business, or his residence, or in any manner in which the United States marshal of the district in which the public improvement is situated is authorized by law to serve summons."
 
 
 [2]
 
 "Ben B. Greene, Inc.
 Licensed Electrical Contractor
 "40-18 Astoria Long Island City
 Boulevard S 3, N. Y.
 "RAvenswood 8-7501-2
 January 9, 1957

"Thompson Construction Corp.
 11 North Pearl Street
 Albany 7, New York

 "Re: DA 30-075 ENG 6940
 Lewiston, N. Y.
 "Gentlemen:
 "According to our records, on the above captioned job, there is a balance due of $2700.10, plus the approximate sum of $4,827.88, representing change orders, to date, making a total due us of $7,527.98.
 "Subject to your approval, this letter may serve as your authority to make all payments now or hereafter due us under the above contract to:
 J. A. Edwards & Co., Inc.,
 for Ben B. Greene, Inc.
 206 East 29th Street
 New York, New York
 Please charge all such payments to our account under the above contract.
 "We thank you for any cooperation you may extend.
 "Very truly yours,
 Ben B. Greene, Inc.
 By /s/ Ben B. Greene
 Ben B. Greene, President
 bbg;bg"
 No question was raised as to the timeliness of the notice with respect to all deliveries between September 19 and October 13, 1956, if it was sufficient in tenor.
 
 
 [3]
 "27. Neither this Subcontract nor any interest therein (including moneys payable thereunder) shall be assigned or transferred, nor shall it be sublet, without the prior written approval of the Contractor and any such attempted assignments, transfer or subletting without the prior written approval of the Contractor shall be of no force and effect, and shall entitle the Contractor, if it so elects, to treat the same as a violation of an essential term of this Subcontract."
 
 
 [4]
 
 "The Thompson Construction Corp. Engineers and Contractors 11 North Pearl Street Albany, 7 N. Y.
 February 8, 1957

"J. A. Edwards & Co., Inc.
 206 East 29th Street
 New York, New York
"Attention: Mr. Blackledge

 Re: Contract No.
 DA-30-075-eng-6940
 AAA Facilities, Lewiston,
 N. Y.
 "Gentlemen:
 "We are enclosing a copy of a letter dated January 9, 1957 sent by Ben B. Greene, Inc. to us. We do not, at the present time, know with definite certainty the amount we owe Greene as there are several unsettled change orders. If all the unsettled change orders are acceptable at Greene's figures, then the total amount owing would be in the neighborhood of $4,500.00.
 "Please be advised that we will recognize the assignment to you in so far as we are permitted by law to do so. Before making any payments to you, we will want definite assurance from you, as well as delivery receipts, proving that the merchandise for which we may pay was delivered to the above job.
 "We are rather disturbed about this account as it was our definite understanding that when payment of $6,946.00 was made to you by us on or about January 4, 1957, that this constituted final payment. It is rather surprising to us that since this job was finished around that time that there should be further billings for material delivered. We are wondering if the material in question was delivered prior to or after January 4th.
 "Yours very truly,
 The Thompson Construction Co.
 /s/ John S. Thompson
 John S. Thompson
 "JST:es
 Copy: Ben B. Greene, Inc."