316 F.2d 912
 UNITED STATES of America for the Use and Benefit of the
HENRY WALKE COMPANY, a Virginia corporation, Appellant,
v.
William G. VAN de RIET and Peter H. Van de Riet, partners
trading as Van de Riet Construction Company, and Reliance
Insurance Company, a Pennsylvania corporation with its
principal office in the City of Philadelphia, Appellees.
 No. 8867.
 United States Court of Appeals Fourth Circuit.
 Argued April 1, 1963.
Decided April 25, 1963.
 
 1
 P. A. Agelasto, Jr., Norfolk, Va., for appellant.
 
 
 2
 William P. Oberndorfer, Norfolk, Va. (Kaufman, Oberndorfer, Spainhour & Hall, and Ira B. Hall, Norfolk, Va., on the brief), for appellees.
 
 
 3
 Before HAYNSWORTH and BRYAN, Circuit Judges, and HARRY E. WATKINS, District Judge.
 
 
 4
 HARRY E. WATKINS, District Judge.
 
 
 5
 This is an action by plaintiff, The Henry Walke Company, which furnished material on a government contract, to recover the sum of $9,181.20 under the Miller Act (Title 40 U.S.C.A. 270a et seq.) directly from Van de Riet Construction Company, the prime contractor, and Reliance Insurance Company, the surety on the prime contractor's payment bonds, for such materials furnished to Acme Fence Co., Inc., a subcontractor. The original complaint, which alleged that full and proper notice as required under the Miller Act ahd been given, was subsequently amended to contain the alternate allegation that no notice was required, as plaintiff had a direct contractual relationship with defendant, Van de Riet, the prime contractor. Two questions were presented to the District Court, hearing the case without a jury, for decision. (1) Was there a contractual relationship, within the meaning of the Miller Act, between Van de Riet and Walke, and, if so, is Walke entitled to recover thereunder? (2) Was the 90 day notice required under the Miller Act given by Walke to Van de Riet? Both questions were answered in the negative by the trial court, and judgment was entered for Van be Riet and its surety, and plaintiff Walke has appealed. In a clear and able opinion, the District Court has set forth his findings of fact and conclusions of law. We find no error and affirm the judgment of the Court below.
 
 
 6
 On September 16, 1958, Van de Riet was awarded a construction contract for off-site imporvements, utilities and structures essential to a 500-unit Capehart Housing Facility at Langley Air Force Base, Langley Field, Virginia, at a contract price of $369,000.00. As required by the Miller Act, Van de Riet, with Reliance as surety, executed a payment bond. Included in the work to be performed by Van de Riet was an item for fencing. Van de Reit subcontracted this portion of the job to Acme, at a price of $13,500.00 for both labor and materials, the subcontract being dated October 31, 1958, but providing for a beginning date on October 7, 1958, and for completion of all work in 540 days. Acme furnished Van de Riet a performance and payment bond with Standard Accident Insurance Company as surety. The subcontract to Acme provided for periodic payments to Acme upon presentation of certificates issued under the schedules of values contained in the contract between Van de Riet and the United States.
 
 
 7
 Acme was in very weak financial condition, and to assist itself in obtaining materials on credit Acme prepared and submitted to Van de Riet for approval an assignment of the proceeds of its contract to Walke, the assignment reading as follows:
 
 
 8
 'Assignment of Contract to Henry Walke Company 'For value received we the undersigned have assigned unto Henry Walke Company contract drawn between Van de Riet Construction Company and Acme Fence Co., Inc. dated October 7, 1958. 'The amount of this contract is $13,500.00 to furnish fencing material and labor to install same for the Armed Services Housing Project Off-Site Improvements and Utilities for U.S. Air Force, at Langley Air Force Base, Virginia. 'For consideration of pipe and supplies Acme Fence Company, Inc. hereby assigns to Henry Walke Company all moneys due or to become due on above contract.
 
 
 9
 'Acme Fence Co., Inc. ' (s) SAMUEL GUGINO President 'Nov.-18-1958 'Date
 
 
 10
 'Approved
 
 
 11
 'Van de Riet Const. Co.
 
 
 12
 '(s) PETER H. VAN DE RIET
 
 
 13
 '12-1-58 Date'
 
 
 14
 Acme also obtained the written consent of Standard that such assignment would not invalidate its bond. This consent was given after Acme had executed its assignment, but apparently prior to the date Van de Riet approved the assignment on December 1, 1958, and prior to the time any order for materials was placed by Acme.
 
 
 15
 On December 2, 1958, Walke acknowledged receipt of the approved assignment of the account in a letter to Van de Riet stating:
 
 
 16
 'It is our understanding that the amount of the contract between you and Acme Fence Company, Incorporated is $13,500.00 and we further understand that this sum will be paid to us under the assignment rather than to Acme Fence Company.
 
 
 17
 'If the above does not conform to your understanding of the transaction, please advise us at once.'
 
 
 18
 The first order for materials was placed by Acme with Walke by letter dated December 2, with request for delivery to Acme's rail siding. The price for such material, shipped on December 2, 1958, and January 13, 1959, aggregated $12,602.38, or $897.62 less than the total subcontract price of $13,500.00. The order was for 'tons' of pipe and wire. Before Acme could use the pipe or rolls of wire on the project it would have been necessary for Acme to cut the pipe to size and fabricate that wire. It is conceded that only a portion of the material was used on the project in question. Acme's president admitted that some of the material was never intended and could not be used for this particular subcontract and this is so despite Acme's letter to Walke dated December 3, which assured Walke that the material purchased was to be used on this job. There was a conflict in the testimony as to whether any substantial part of such material conformed to the specifications of the subcontract. The material was delivered to Acme's rail siding, not to the job site itself.
 
 
 19
 Acme performed a part of its subcontract for which Van de Riet paid $2,592.00, not to Acme, but directly to Walke under the assignment. According to Acme, Walke had been informed that payment on the contract would not be made until the job was completed. After receiving the payment mentioned above, Walke telephoned Van de Riet to inquire as to when the fence would be installed.
 
 
 20
 Walke does not contend that Van de Riet ever promised or agreed to do anything as far as Walke was concerned, other than to recognize the assignment of the proceeds of the contract. It is true that the assignment refers to an assignment of the contract, but Walke does not contend that it was to perform the obligations of the subcontract.
 
 
 21
 Subsequently, Acme became insolvent and defaulted under its subcontract. The District Court found that much of the material purchased from Walke had been used by Acme on other jobs. When Acme was financially unable to complete the contract, Van de Riet proceeded to do so at a total cost in excess of the original contract price of $13,500.00.
 
 
 22
 Walke's officers testified that Walke was looking to Van de Riet for payment, but the trial court found, and we think correctly, that there is no evidence to substantiate the view that Van de Riet was of the same opinion, except as to the assignment that was accepted by Van de Riet. Van de Riet states that while he was aware of the assignment he had no knowledge of the non-payment of Acme's indebtedness to Walke until sometime in May 1960,[1] long after the 90-day notice period in the Miller Act had passed.
 
 
 23
 The gist of the amended complaint is that Walke did, on or about December 1, 1958, enter into a contract with Van de Riet, and that Van de Riet agreed to pay Walke for the materials supplied to Acme. The trial court found:
 
 
 24
 'There can be no doubt but that Van de Riet had knowledge of the fact that Acme was procuring materials for the housing project from Walke. However that may be, the mere acceptance of the assignment did not create a contractual relationship between Walke and Van de Riet, other than as to the funds due or to become due under Acme's contract with Van de Riet. The latter placed no order with Walke and did not look to Walke for performance of the contract. The entire contract was not treated as assigned; that subject of the assignment was the money due and to become due thereunder. 6 C.J.S. Assignments 84 p. 1142. It was accepted by Van de Riet at a time when no order had been placed by Acme and no material had been shipped. * * * From these facts we cannot see how Walke had any express or implied contractual relationship with Van de Riet in so far as furnishing the material in the prosecution of the work 'provided for in such contract' may be involved. At no time did Walke ever advise Van de Riet that Walke was looking for anything more than the proceeds of the contract.'
 
 
 25
 It is clear that there was no contract, express or implied, whereby Van de Riet obligated itself to pay for such materials, and it is equally clear that there was no contractual relationship, express or implied, between Walke and Van de Riet, within the meaning of the Miller Act which would dispense with the required 90-day notice. United States for use and benefit of J. A. Edwards v. Thompson Construction Corp., 2 Cir., 273 F.2d 873, 78 A.L.R.2d 421 affirming D.C., 172 F.Supp. 161; Bowden v. United States, 9 Cir., 239 F.2d 572; United States for use and benefit of American Radiator and Standard Sanitary Corp. v. Northwestern Engineering Co., 8 Cir., 122 F.2d 600; United States for use and benefit of Noland Co. v. Skinner & Ruddock, Inc., E.D.S.C,164 F.Supp. 616; United States, etc. v. United States Guarantee Co., W.D.N.Y., 37 F.Supp. 561; 6 C.J.S. Assignments 84, p. 1142; United States, etc. v. New York Electric Construction Co., Inc. et al., D.C.N.D., 184 F.Supp. 520.
 
 
 26
 The Miller Act, Title 40 U.S.C.A. 270b provides that every person who furnished materials in the prosecution of the work provided in the contract in respect of which a payment bond had been supplied, and who has not been paid in full within ninety days,
 
 
 27
 '* * * shall have the right to sue on such payment bond for the amount, or the balance thereof, unpaid at the time of institution of such suit and to prosecute said action to final execution and judgment for the sum or sums justly due him: Provided, however, That any person having direct contractual relationship with a subcontractor but no contractual relationship express or implied with the contractor furnishing said payment bond shall have a right of action upon the said payment bond upon giving written notice to said contractor within ninety days * * *.'
 
 
 28
 The trial court found that the first demand for payment made by Walke of Van de Riet was by letter from Walke's attorney, dated June 17, 1960, more than 90 days from the time Walke furnished or supplied the last of the material for which the claim was made. It was not until this date that Van de Riet was aware or had reasonable cause to believe that Walke was looking to it for payment under the Miller Act. There is no merit in Walke's contention that the assignment, together with Walke's acknowledgement thereof to Van de Riet, dated December 2, 1958, constituted notice to Van de Riet under the Miller Act. The trial court found that this letter acknowledging the assignment was not a notice of any kind from Walke to Van de Riet, but merely a confirmation of the assignment and of Walke's understanding that the assigned moneys due or to become due would be paid to it under the assignment rather than to Acme. The letter was never intended as an assertion of a claim upon the payment bond. It could not have been so intended for at the time it was written Walke had no claim. The findings and conclusions of the trial court are supported both by reason and by such authorities as can be found on the subject. United States for use and benefit of J. A. Edwards v. Thompson Construction Corp., supra; Houston Fire & Casualty Company v. United States, 5 Cir., 217 F.2d 727, and cases cited above.
 
 
 29
 For these reasons we believe that both questions must be answered in the negative and that the trial court correctly entered judgment for defendant. This makes it unnecessary for us to decide whether Walke sustained its burden of proof that it furnished the material for which it seeks payment 'in the prosecution of the work'. It is clear that much of the material went into other projects and that in one instance Walke received the sum of $829.18 covering work done by Acme on a separate job.
 
 
 30
 Affirmed.
 
 
 
 [1]
 The witness was apparently referring to the letter of June 17, 1960, from Walke's attorney, and erred when he said May, 1960