656 F.Supp. 1194 (1987)
UNITED STATES of America, for the Use and Benefit of METAL MANUFACTURING, INC., an Arizona corporation, Plaintiff,
v.
FEDERAL INSURANCE COMPANY, a New Jersey corporation; McCarthy Western Constructors, Inc., an Arizona corporation, Defendants.
Civ. No. 86-692 PHX PGR.
United States District Court, D. Arizona.
April 2, 1987.
*1195 *1196 Philip R. Wooten, Phoenix, Ariz., for plaintiff.
Michael L. Rhees, Phoenix, Ariz., for defendants.

MEMORANDUM AND ORDER
ROSENBLATT, District Judge.

MEMORANDUM

I. BACKGROUND
McCarthy Western Constructors, Inc. (McCarthy) was the general contractor for the Federal Correction Institute in Phoenix. Mountain States Mechanical, Inc. (Mountain States) was a subcontractor of McCarthy. J.B. Architectural and Mechanical, Inc. (J.B.) was in turn a subcontractor of Mountain States. Use-plaintiff Metal Manufacturing, Inc. (MMI) supplied materials to J.B. MMI did not receive payment from J.B. for certain materials supplied. It sued Mountain States in superior court and received a default judgment in the amount of $16,744 plus interest. Apparently that judgment is uncollectible because, in the case before us, use-plaintiff MMI is suing McCarthy and Federal Insurance Co. (Federal), McCarthy's surety under the Miller Act, 40 U.S.C. section 270a et seq., for $16,744 plus interest as well as fees and costs. The $16,744 represents the amount due for two deliveries of supplies: a December 7, 1984 delivery of flashing and coping totalling $10,219 and a December 27, 1984 delivery of coping, clips, and backing plates totalling $6,525.

II. CROSS MOTIONS FOR SUMMARY JUDGMENT
40 U.S.C. section 270b provides:
(a) Every person who has furnished labor or material in the prosecution of the work provided for in such contract, in respect of which a payment bond is furnished under section 270a of this title and who has not been paid in full therefore before the expiration of a period of ninety days after the day on which the last of the labor was done or performed by him or material was furnished or supplied by him for which such claim is made, shall have the right to sue on such payment bond for the amount, or the balance thereof, unpaid at the time of institution of such suit and to prosecute said action to final execution and judgment for the sum or sums justly due him: Provided, however, That any person having direct contractual relationship with a subcontractor but no contractual relationship express or implied with the contractor furnishing said payment bond shall have a right of action upon the said payment bond upon giving written notice to said contractor within ninety days....
(emphasis in original). It is not disputed that plaintiff gave the necessary notice to McCarthy. The issue presented in these motions is whether MMI had any contractual relationship with either McCarthy or a subcontractor of McCarthy to bring its claim within the realm of the act.
Courts have strictly construed the requirement that there be a direct contractual relationship with either the general contractor or a subcontractor with which the general has a contractual relationship. MacEvoy v. United States, 322 U.S. 102, 64 S.Ct. 890, 88 L.Ed. 1163 (1944); Fidelity and Deposit Co. v. Harris, 360 F.2d 402 (9th Cir.1966). There is no dispute in this case that there was a contractual relationship between McCarthy and Mountain States; between Mountain States and J.B.; and between J.B. and MMI. For MMI to be able to recover under the Miller Act, *1197 however, there must have been a contractual relationship between it and McCarthy or between it and Mountain States. The terms of the Act would also be satisfied if J.B. had a direct contractual relationship with McCarthy, making it a subcontractor of McCarthy, since MMI did have a direct contractual relationship with J.B.

A. MMI and Mountain States
MMI seeks summary judgment on the grounds that it had a direct contractual relationship with Mountain States. The basis for the claim is three Assignment of Contract Rights and Joint Check Agreements, Exs. B, F, and H to plaintiff's Statement of Facts in Opposition to Defendants' Motion for Summary Judgment and in Support of Use-Plaintiff's Cross Motion for Summary Judgment (Opposition Statement of Facts). The first of the contracts, Ex. B, has very limited relevance for purposes of this case. MMI received payment for the materials listed in that agreement. Exs. C and D to plaintiff's Opposition Statement of Facts are copies of checks made payable to J.B. and MMI in satisfaction of the materials listed in Ex. B. The Ex. B contract is relevant only insofar as it indicates that the parties complied with an earlier Assignment of Rights and Joint Check Agreement.
Exs. F and H reflect the uncollected $16,744 at issue in this case. The text of Ex. F purports to create an agreement between "McCarthy Western, herein called `General Contractor', and J.B. Arch. & Mech./Mountain States Mech. herein called `Sub Contractor' and METAL MANUFACTURING INC.." The contract is signed on the line denominated "General Contractor" by a representative of Mountain States, on the line "Sub Contractor" by a representative of J.B., and on the line "Materialman" by MMI. Defendants argue that the Ex. F contract is a nullity because McCarthy, who is listed as a party, never signed the contract, and because a representative of Mountain States signed on the line marked "General Contractor." This is not a persuasive argument. First, McCarthy need not have been a party to the contract for Miller Act liability to attach. It is only necessary that a contract exist between Mountain States and MMI. The fact that McCarthy was listed as a party but never signed the contract does not affect the validity of the contract as between Mountain States and MMI. Likewise, the fact that Mountain States signed on the line reserved for the "General Contractor" does not invalidate the contract. Such a hyper-technical view of a contract is not in keeping with the widely accepted view that contracts are to be read to give effect to the intent of the parties. The prior Assignment of Rights and Joint Check Agreement (Ex. B) reflects the intention of the parties. Ex. B suffers from the same flaws that McCarthy attributes to Ex. F. Mountain States nonetheless honored that agreement by writing two joint checks for the total amount of $11,388 specified in Ex. B.
The question, then, is whether the Assignment of Contract Rights and Joint Check Agreements create the kind of "direct contractual relationship" required by the Miller Act. The court finds that as a matter of law they do not. The general proposition established by the cases is that a direct contractual relationship requires that the contractor or subcontractor actually assume responsibility to pay for the materials provided by the materialman.
In the seminal case of United States v. Van de Riet, 316 F.2d 912 (4th Cir.1963), the sub assigned the proceeds of its contract with the general contractor to the materialman in order to obtain materials on credit from the materialman. The agreement, entered into by the sub and the materialman, was approved by the general. The Fourth Circuit adopted the findings of the district court:
[T]he mere acceptance of the assignment did not create a contractual relationship between [the materialman] and [the general], other than as to the funds due or to become due under [the sub's] contract with [the general]. The latter placed no order with [the materialman] and did not look to [the materialman] for performance of the contract. The entire contract was not treated as assigned; the subject *1198 of the assignment was the money due and to become due thereunder.
Id. at 915.
Another frequently cited case addressing this issue is United States v. Hesselden Construction Co., 404 F.2d 774 (10th Cir. 1968). In Hesselden the general contractor, concerned that the materialman of his subcontractor was not delivering needed materials, arranged a meeting of the three to come to an agreement concerning delivery of the materials. The materialman agreed to continue supplying materials and the general agreed to make further payments of the receipts due the sub by checks payable jointly to the sub and the materialman. The agreement was reduced to a writing between the general and the materialman. When the sub went bankrupt without paying for the materials, the materialman sued the general under the Miller Act. The Tenth Circuit found: "[A] review of the record shows that at no time did [the general] promise to pay [the materialman] for the material he supplied. The letter agreement was merely a request by [the materialman] that [the general] make further payments by joint checks." Hesselden, 404 F.2d at 777. Hesselden has been cited as determinative in similar situations by several courts. See United States v. Liles Construction Co., 440 F.2d 474 (5th Cir.1971); United States v. P.W. Parker, Inc., 504 F.Supp. 1066, 1071 (D.Md.1980) (joint check agreement did not constitute an "original contractual undertaking from [the general] to [the materialman] ... and no indication by [the general] that [it] considered it had any direct pay obligation to [the materialman]") Other courts have adopted the principle that a direct contractual relationship requires an assumption of the obligation to pay for materials. See Fidelity and Deposit Co. of Maryland v. Harris, 360 F.2d 402 (9th Cir.1966) (fact that general later made direct contract with materialman does not show that earlier dealings between materialman and sub-sub also involved the general); United States v. E.J.T. Construction Co., 517 F.Supp. 1178 (E.D.Pa.1981), cert. denied, 459 U.S. 856, 103 S.Ct. 126, 74 L.Ed.2d 109 (1982) (general contractor agreed to pay directly to the materialman the unpaid balance due from the sub to the materialman, and also agreed to pay directly for future orders of materials); United States v. Maryland Casualty Co., 64 F.Supp. 522 (S.D. Cal.1946).
MMI argues that Fluor Corp. v. United States, 405 F.2d 823 (9th Cir.), cert. denied, 394 U.S. 1014, 89 S.Ct. 1632, 23 L.Ed.2d 40 (1969), is controlling rather than the Van de Riet and Hesselden line of cases. Fluor is consistent with those cases on the principle that a contractual relationship can be established only when the general or sub has assumed a direct obligation to pay for the materials. In Fluor the subcontractor orally advised the materialman to a sub-subcontractor that it would pay the materialman directly and deduct the payments from the amount the sub was to pay the sub-sub under the latter's contract. The Ninth Circuit affirmed the district court's finding that "both [the sub] and [the sub-sub] assumed direct obligations to pay [the materialman] for the work." Id. at 826 (emphasis in original). The case of United States v. Gramercy Contractors, Inc., 433 F.Supp. 156 (S.D.N.Y.1977), offers some support for MMI's argument. The district court found that a written agreement from the general to the materialman that the general would not make final payment to the sub without a release from the materialman created an implied contractual relationship between the general and the materialman for Miller Act purposes. Although the court did not find that the general assumed the obligation to pay the materialman, it did find that the general's "acts throughout the relevant period were consistent with its express obligation to plaintiff to ensure that it was paid." Id. at 161. To the extent that this district court case is inconsistent with the general body of case law discussed above, this court declines to follow it.
The "Assignment of Contract Rights and Joint Check Agreements" involved in this case do not, as a matter of law, create the kind of direct obligation on the part of Mountain States required under the Miller Act. The only other evidence *1199 MMI offers to support its contention of a direct contractual relationship with Mountain States is a January 15, 1985 letter to it from the president of Mountain States which states: "MOUNTAIN STATES MECHANICAL, INC. will NO LONGER be responsible for any charges relating in any fashion to J.B. ARCHITECTURAL & MECHANICAL for any project." Ex. J to Opposition Statement of Facts (emphasis in original). MMI argues that this letter establishes that Mountain States was guaranteeing payment of J.B.'s debts up to the time of the letter. This blanket disclaimer cannot be construed, ex post facto, to create an agreement between Mountain States and MMI whereby Mountain States agreed to guaranty the debts of J.B. There is no evidence that such an agreement was ever made. The January 15, 1985 letter cannot serve to support a grant of summary judgment in favor of MMI, nor does it serve to create a question of fact as to the issue of whether MMI had a direct contractual relationship with Mountain States.

B. MMI and McCarthy Western
MMI seeks to preclude summary judgment on behalf of defendants by arguing that there is a question of fact as to whether there was a contractual relationship between MMI and McCarthy. Defendants have presented the affidavit of Jody Baldwin, project engineer for McCarthy Western on the FCI project, which states: "[n]o contract or other agreement was ever entered into between McCarthy Western Constructors, Inc, and ... Metal Manufacturing Inc. regarding The Project." Ex. 3 to Statement of Facts in Support of Motion for Summary Judgment (Defendants' Statement of Facts). MMI argues that the first Assignment of Contract Rights and Joint Check Agreement, Ex. B to Opposition Statement of Facts, was signed by Ken Gallagher on behalf of "McCarthy/Western  Mountain States Mech. Inc." and that a question of fact is created as to whether Gallagher was acting as an agent of McCarthy when he signed that agreement. Ex. B is not sufficient to create a genuine issue of fact which would preclude summary judgment on behalf of defendants as to this issue. In addition, MMI is not seeking to recover under Ex. B because the monies due under that agreement have been paid. Neither Ex. F or Ex. H, the agreements under which MMI has not been paid, contain the language that MMI argues shows that Gallagher signed for both McCarthy and Mountain States. MMI also cites to Ex. R of the Opposition Statement of Facts in support of its argument that Mountain States was an agent of McCarthy. Ex. R is a letter from J.B. to McCarthy requesting that McCarthy issue joint checks to J.B. and SMP Mechanical Constructors "[i]n order to expedite obtaining material needed for ... the Federal Prison job...." A handwritten note at the bottom of the letter states: "Please submitt [sic] for approval thru [sic] Mountain States Mechanical." This letter offers no support to MMI's argument that Mountain States was an agent of McCarthy. Since Mountain States, not McCarthy, would be issuing the joint checks to J.B. and SMP, it is only logical that McCarthy would refer a request for joint checks to Mountain States. There is no other evidence presented to support the argument that Mountain States was an agent of McCarthy.

C. McCarthy and J.B.
MMI argues that J.B. was a subcontractor of McCarthy. A contract with the general contractor is a prerequisite to being a subcontractor. J.W. Bateson Co., Inc. v. United States, 434 U.S. 586, 98 S.Ct. 873, 55 L.Ed.2d 50 (1978). The affidavit of Jody Baldwin presented by defendants states: "No contract or other agreement was ever entered into between McCarthy Western Constructors, Inc. and ... J.B. Architectural & Mechanical ... regarding The Project." Ex. 3 to Defendants' Statement of Facts. There is nothing in the record that challenges this sworn statement.

D. Miscellaneous Issues
MMI's argument that
[i]t must and should be the rule that a general contractor should be estopped from arguing that a materialman is too *1200 remote in the chain of parties where the general contractor is aware of the supplying of the materials and has good reason to believe that a materialman is ultimately looking to the general contractor for payment
has no validity. The language of the Miller Act, and the cases that have interpreted it, make it clear that there must be a contractual relationship before Miller Act liability will attach. Although the Act is remedial and liberally construed to effect that purpose, United States v. Avanti Const., Inc., 750 F.2d 759, 760-61 (9th Cir.1984), cert. denied, ___ U.S. ___, 106 S.Ct. 60, 88 L.Ed.2d 49 the requirement of direct contractual relationship with the general contractor or a first-tier subcontractor has long been strictly construed. See MacEvoy, supra. Thus, a general contractor cannot be expected to answer the claims of every lower level supplier or face estoppel of its Miller Act defense. This analysis also applies to MMI's equitable arguments that McCarthy was long aware of MMI's interests and could have protected itself by requiring security from Mountain States, and that McCarthy was aware of credit problems involving Mountain States and J.B. and other suppliers. While these allegations are true, they cannot serve to eliminate the clear statutory requirement that there be a contractual relationship with either the general contractor or a subcontractor.
Defendants seek to recover their attorneys' fees. The United States Supreme Court has held that the Miller Act does not provide for attorneys' fees. F.D. Rich Co., v. United States, 417 U.S. 116, 94 S.Ct. 2157, 40 L.Ed.2d 703 (1974).
This court has subject matter jurisdiction of the Miller Act claim pursuant to 40 U.S.C. section 270b(b). Jurisdiction over count two of the Amended Complaint, common law unjust enrichment, is based on pendent jurisdiction. Upon dismissal of the Miller Act claim, the court declines to retain jurisdiction over the common law claim. United Mine Workers of America v. Gibbs, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966).

ORDER
For the reasons stated in the accompanying Memorandum,
IT IS HEREBY ORDERED that defendants' Motion for Summary Judgment is GRANTED.
IT IS FURTHER ORDERED that plaintiffs' Cross-Motion for Summary Judgment is DENIED.
IT IS FURTHER ORDERED that defendants' request for attorneys' fees is DENIED.
IT IS FURTHER ORDERED that count two of plaintiff's Amended Complaint is DISMISSED.